UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUEL MOLINA, et al., <br><br>        Plaintiffs, <br><br>   v. <br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., <br><br>        Defendants. | CIVIL ACTION NO. 4:21-CV-00038 <br><br>(BRANN, J.) <br>(MEHALCHICK, M.J.) |

## REPORT AND RECOMMENDATION

Pending before this Court is a Motion to Certify the Class and to appoint class counsel filed on March 29, 2021, by Plaintiffs Miguel Molina, Alexis Maldanado, Vann L. Bailey, Jason Cisne, and Angel Irizarry. (Doc. 43). Plaintiffs initiated this matter on January 8, 2021, with a Complaint filed against Defendants K. Kauffman, Superintendent at the State Correctional Institution Huntingdon (SCI-Huntingdon); J. Spyker, Deputy Superintendent for the Centralized Services at SCI-Huntingdon; G. Ralston, Unit Manager at SCI-Huntingdon; and J. Wetzel, Secretary of the Pennsylvania Department of Corrections (DOC). (Doc. 1). The now-operative Amended Complaint ("the Complaint") was filed on March 21, 2021, which clarified the names of the previously listed Defendants to be Kevin Kauffman, Jill Spyker, John E. Wetzel, and G. Ralston. (Doc. 35, at 6-7). Additional Defendants were also added: Scott Walters, Deputy Superintendent for Centralized Services at SCI-Huntingdon during times relevant to this action; Tabb Bickell, Executive Deputy Secretary for Institutional Operations for the DOC; Erin Brown, Director of the Office of

Population Management of the DOC; and William Nicklow, Director of the Office of Population Management during times relevant to this action. (Doc. 35, at 7-9).

Plaintiffs bring suit against Defendants for constitutional violations caused by the deterioration of the SCI-Huntingdon facility and by employee misconduct. (Doc. 35, at 1-3). One alleged result of this deterioration and misconduct is that inmates are at greater risk of contracting COVID-19. (Doc. 35, at 1-3). Through this Motion, Plaintiffs seek to certify a class of prisoners and appoint Marianne Sawicki, Esquire, to represent the class. (Doc. 43). The Motion has been fully briefed and is now ripe for disposition. (Doc. 44; Doc. 45; Doc. 47).

I. DISCUSSION

    A. RULE 23(A) CERTIFICATION OF CLASS ACTION

Plaintiffs seek to certify a class of plaintiffs comprising of "all inmates who have been incarcerated at SCI Huntingdon at any time since December 30, 2018." (Doc. 44, at 6). Plaintiffs fail to meet the minimum requirements for certification of a class action. There are four prerequisites that must be met in order to certify a class action:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). A class may only be certified if all four requirements of Rule 23(a) are met. *Fotta v. Trustees of United Mine Workers of Am.*, 319 F.3d 612, 618–19 (3d Cir. 2003).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

> What matters to class certification … is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.
>
> *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009).

This requires that all class members "have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). This does not mean that a violation of the same provision of law applies to all class members, rather the claims must be productively litigated all at once through a common contention—"for example, the assertion of discriminatory bias on the part of the same supervisor." *Dukes*, 564 U.S. at 350.

The Court of Appeals for the Third Circuit recently addressed a case where disability rights advocates sued a restaurant under the Americans with Disabilities Act, alleging they experienced difficulty ambulating due to the sloped nature of the restaurant's parking lots. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 473 (3d Cir. 2018). The two disability rights advocates who brought suit moved to represent "all physically disabled individuals who may have experienced similar difficulties at Steak n' Shake restaurants throughout the country." *Mielo*, 897 F.3d at 473. Specifically, the District Court certified the class and defined it as:

> All persons with qualified mobility disabilities who were or will be denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Steak 'n Shake restaurant location in the United States on the basis of a disability because such persons encountered accessibility

3

barriers at any Steak 'n Shake restaurant where Defendant owns, controls and/or operates the parking facilities.

*Mielo,* 897 F.3d at 487-88.

In analyzing whether this met the commonality requirement of Rule 23(a), the court first clarified that the class definition covered anyone "who encountered 'accessibility barriers at any Steak 'n Shake restaurant.'" *Mielo,* 897 F.3d at 488. "This could include claims, for instance, regarding the bathroom of a Steak 'n Shake that had maintained a perfectly ADA-compliant parking facility." *Mielo,* 897 F.3d at 488. Since individuals could suffer a multitude of harms under the ADA, whether by enduring a sloped parking facility or narrow bathroom doors or inaccessible water fountains, the commonality requirement was not met. *Mielo,* 897 F.3d at 489-90. Even within just the parking facility, different harms could occur: "A class member, for example, complaining that 'accessible' parking signage was 'mounted less than 60 inches above the finished surface o[f] the parking area,' has experienced harm different from that of a class member complaining that '[t]he surfaces of one or more access aisles had slopes exceeding 2.1%.'" *Mielo,* 897 F.3d at 490. The variety of violations suffered by the class members meant that the claims did not "depend upon a common contention" sufficient to satisfy Rule 23(a)(2). *Mielo,* 897 F.3d at 490.[1]

In support of certification, Plaintiffs submit that all members of the class suffered from injury arising from unconstitutional conditions at the prison both before and after the onset of COVID-19. (Doc. 44, at 6-7). The conditions included the state of the facility and the "habitual insubordinate conduct of the staff." (Doc. 44, at 6-7). First, it is unclear what injury

---

[1] The Third Circuit noted that "it seems to us that a class definition limited to *slope-related* injuries occurring *within* a parking facility would present a class definition much more likely to meet the commonality requirement of Rule 23(a)(2)." *Mielo,* 897 F.3d at 490 n.23. (emphases in original).

4

or harm Plaintiffs submit is common to all members of the proposed class. Plaintiffs write at length about the conditions at SCI-Huntingdon (narrow catwalks, passive air circulation, antiquated electrical wiring, etc.) but, except for higher rates of COVID-19, do not articulate how these conditions have led to injury. (Doc. 44, at 2-3). The brief in support does not address the harm suffered by inmates housed at the facility prior to the pandemic.[2] (Doc. 44). Second, even if the Court were to presume that the conditions of the facility and the conduct of staff caused injury to the inmates, the range of injuries suffered by all inmates housed at SCI-Huntingdon since December 30, 2018 is too varied to satisfy Rule 23(a)(2). In *Mielo*, the Third Circuit held that ADA-violations ranging from sloped surfaces to inadequate parking signage did not lend itself to class certification. *Mielo*, 897 F.3d at 490. Similarly, the injuries here would range in type, allegedly arising from a wide array of facility conditions as well as employee insubordination. (Doc. 44). Some members of the proposed class suffered from COVID-19 and some did not. (Doc. 44, at 2-7). As in *Mielo*, the type of harm endured by the proposed class members does not depend upon a common contention conducive to a single instance of litigation. *Dukes*, 564 U.S. at 349-50; *Mielo*, 897 F.3d at 490.

II. **RECOMMENDATION**

Based on the foregoing, it is recommended that the Court **DENY** Plaintiffs' Motion to Certify the Class. (Doc. 43). As such, it is also recommended that the Court **DENY** Plaintiffs'

---

[2] A discussion of how structural deficiencies affected the inmates is required to sustain an Eighth Amendment conditions of confinement claim. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement. Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments.").

Motion to Appoint Class Counsel. (Doc. 43).

Dated: June 8, 2021                                         *s/ Karoline Mehalchick*
                                                             **KAROLINE MEHALCHICK**
                                                             **United States Magistrate Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUEL MOLINA, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 4:21-CV-00038 |
| v. | |
| | (BRANN, J.) |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | (MEHALCHICK, M.J.) |
| Defendants | |

# NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 8, 2021**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: June 8, 2021**                                              *s/ Karoline Mehalchick*
                                                                      **KAROLINE MEHALCHICK**
                                                                      **United States Magistrate Judge**