## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MIGUEL MOLINA, et al.,

                    Plaintiffs,

          v.

K. KAUFFMAN, et al.,

                    Defendants.

CIVIL ACTION NO. 4:21-CV-00038

(BRANN, J.)
(MEHALCHICK, M.J.)

### MEMORANDUM

Before the Court is a motion to compel discovery, an objection to and request for reconsideration of the Court's case management Order dated January 25, 2023, and a motion for an evidentiary hearing filed by *pro se* Plaintiff Miguel Molina ("Molina"), an inmate currently incarcerated at the State Correction Institution – Forest ("SCI-Forest"). (Doc. 224; Doc. 234; Doc. 238). On January 8, 2021, *pro se*-prisoner Plaintiffs Vann L. Bailey, Jason Cisne,[1] Angel Irizarry, Alexis Maldanado, and Molina initiated this civil rights action by filing a complaint against Defendants Kevin Kauffman, Superintendent of SCI-Huntingdon; Jill Spyker, Deputy Superintendent for Decentralized Services at SCI-Huntingdon; Scott Walters, former Deputy Superintendent for Centralized Services at SCI-Huntingdon; G. Ralston, Unit Manager of certain housing units (B and C Blocks) at SCI-Huntingdon; John E. Wetzel, Secretary of Corrections of the Commonwealth of Pennsylvania; Tabb Bickell, Executive Deputy Secretary for Institutional Operations for the Department of Corrections ("DOC"); and Erin Brown, Director of the Office of Population Management ("OPM") of

---

[1] On February 16, 2022, Plaintiff Cisne filed a stipulation of voluntary dismissal with prejudice, informing the Court that matters between Defendants and Cisne have been adjusted, compromised, and settled. (Doc. 169). On February 24, 2022, the Court dismissed Cisne's action with prejudice as to Defendants. (Doc. 177).

the DOC (collectively, the "Defendants"). (Doc. 1). On December 1, 2022, the Court ordered Molina's case to proceed in this action and directed the Clerk of Court to open new civil actions for each of the remaining Plaintiffs. (Doc. 223).

Molina filed the motion to compel discovery on January 9, 2023 (Doc. 224), the motion for reconsideration on February 6, 2023 (Doc. 234), and the motion for an evidentiary hearing on February 28, 2023 (Doc. 238).[2] For the reasons stated herein, Molina's motions will be DENIED. (Doc. 224; Doc. 234; Doc. 238).

I.   **DISCUSSION**

A. **MOTION TO COMPEL DISCOVERY**

Molina seeks the production of requested discovery documents, asserting that Defendants have failed to properly respond to his Request for Production of Documents submitted on November 8, 2022. (Doc. 224, at 1; Doc. 224-1, at 1-5). Molina claims Defendants' response to his Request for Production of Documents, dated December 12, 2022, contained "legally frivolous" boilerplate objections. (Doc. 224, at 1; Doc. 237, at 1). In opposition, Defendants argue that their responses and objections to Molina's discovery requests were proper and that the responsive documents have been made available for inspection and copying by Molina at SCI-Forest. (Doc. 226, at 1-3; Doc. 224-2). Notably, in Molina's motion for an evidentiary hearing, he admits that Defendants provided 527 pages

---

[2] In the motion for an evidentiary hearing, Molina asks that an evidentiary hearing or an in-camera review be scheduled, claiming that Defendants are allegedly refusing to produce discovery. (Doc. 238, at 1). The decision of whether to conduct an in-camera review of documents is generally left to the sound discretion of the district court. *See, e.g.*, *ACLU of N.J. v. FBI*, 733 F.3d 526, 534 (3d Cir. 2013); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 96 (3d Cir. 1992). Based on the Court's review of the record, an evidentiary hearing is not required for the disposition of the pending motion to compel discovery. Accordingly, Molina's motion for an evidentiary hearing is DENIED. (Doc. 238).

of discovery documents for review and copying at Molina's expense. (Doc. 238, at 1). However, Molina contends the majority of these pages are either blank or completely irrelevant to his claims set forth in the fourth amended complaint. (Doc. 238, at 1). Molina asserts that 22 of the 527 are relevant to his claims before the Court. (Doc. 238, at 1).

Rulings regarding the proper scope of discovery are matters consigned to the Court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See *Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); see also *Hasbrouck v. BankAmerica Hous. Servs.*, 190 F.R.D. 42, 44- 45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.*, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

> *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1)

Rule 37 of the Federal Rules of Civil Procedure authorizes a party to move to compel a party to comply with discovery obligations and specifically provides that:

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).

Under Rule 37, a court may issue an order compelling discovery where "a deponent fails to answer a question asked under Rule 30 or 31 [governing depositions on oral examination or written questions]." Fed. R. Civ. P. 37(a)(3)(B)(i). A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. *Morrison v. Phila. Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001)*. "Once that initial burden is met, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Prime Energy & Chem., LLC v. Tucker Arensber P.C.,* No. 2:18-CV-0345, 2022 WL 1642394, at *4 (W.D. Pa. May 24, 2022) (quoting *In re Urethane*

- 4 -

*Antitrust Litig.,* 261 F.R.D. 570, 573 (D. Kan. 2009)). The Court will address each of Molina's Requests for Production of Documents in turn.

### 1.  Numbers 1-3

In discovery request numbers 1, 2, and 3, Molina requests "[t]he full name(s), employment position(s), and business address and phone number(s) of each witness, if any . . . ;" "[t]he identity of each document, item, or other tangible things, including, a summary scope of the evidence the Defendants expects to offer . . . ;" and "[a]ny and all information relevant to the Defendants defense(s), if any, including, the existence description, nature, custody, condition and location of any documents or items and other tangible things, and the identity and location of person(s) who know of any discoverable matter whether exculpatory and/or inculpatory . . . ." (Doc. 224-2, at 4-5). In response, Defendants state that their "preparations in this matter are ongoing," and that any supplemental information or responsive documents will be provided to Molina in accordance with the Federal Rules of Civil Procedure. (Doc. 224-2, at 5).

Molina argues the requested information is "relevant to this case and needed for interrogatories purpose;" "needed to contest the Defendants or witnesses testimony at trial;" and "needed to prepare Plaintiff's defense during or before trial." (Doc. 224, at 2-3). In opposition, Defendants maintain that their response was proper and emphasize that their response will be supplemented if the matter proceeds to trial. (Doc. 226, at 3). In response, Molina maintains that Defendants' position is "clearly erroneous and simpl[y] untenable," asserting that "[n]o explanation is provided as to why such preparations are even necessary at this point in the litigation." (Doc. 237, at 6).

Federal Rule of Civil Procedure 26 requires parties to make certain disclosures without a discovery request. The purpose of the rule is to provide information at the start of litigation that parties can use to prepare for trial or to make informed decisions about settlement. Fed. R. Civ. P. 26 Advisory Committee Notes (1993). Specifically, a party's initial disclosures "must" include:

(i)   the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses;

(ii)  a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv)  for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A).

A party must make these disclosures based on information reasonably available to it when the disclosures are made and the party is not excused from making its Rule 26(a)(1) disclosures simple because it has not fully investigated the case yet, it believes another party's disclosures are insufficient, or another party has not made its disclosures yet. Fed. R. Civ. P. 26(a)(1)(E).

In addition, when a party "learns that in some material respect the disclosure or response is incomplete or incorrect," and "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," that party has a continuing obligation to "supplement or correct its disclosures." Fed. R. Civ. P. 26(e)(1)(A); *see Holley v. Port Auth. of N.Y.*, Civil No. 14-7534 (BRM)(DEA), 2018 WL 11413338, at *2 (D.N.J. May 3, 2018) ("[T]he parties are required to supplement or correct their initial disclosures, as well as any discovery responses, in accordance with Fed. R. Civ. P. 26(e)(1)(A)."). "A majority of courts, the leading treatises, and the Advisory Committee Note to Rule 26 agree that an individual's existence or knowledge can 'otherwise be made known,' and thus be sufficiently disclosed for Rule 26 purposes, through deposition testimony." *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-3770, 2010 WL 1849913, at *3 (D.N.J. May 7, 2010) (collecting references). Nevertheless, the disclosure must be "clear and unambiguous," i.e., more than "the mere mention of an individual's identity." *Eli Lilly & Co.*, 2010 WL 1849913, at *4 (quotation marks omitted).

Here, the Court is satisfied with Defendants' statement that the necessary disclosures will be provided to Molina in accordance with the Federal Rules of Civil Procedure through supplemental disclosures. However, Defendants are reminded of their ongoing duty to supplement or correct its discovery responses if it "learns that in some material respect the disclosure or response is incomplete or incorrect." *See* Fed. R. Civ. P. 26(e)(1)(A). If Defendants fail to do so, then Molina may seek to impose sanctions pursuant to Fed. R. Civ. P. 37. Accordingly, at this time, Defendants' objections are sustained and Molina's motion to compel discovery is denied.

##### 2. Number 4

In discovery request number 4, Molina seeks "[a]ny and all originals or copies of reports pertaining to the Pennsylvania Department of Labor and Industry inspection performed at SCI-Huntingdon in 1992 citing 291 violations of the fire and Panic Act, 25 Pa. Cons. Stat. §§ 1221-1235.1, including but not limited to, the Inspector's factual findings, conclusions, and recommendations." (Doc. 224-2, at 5). In response, Defendants state, "[t]his request is not reasonably related to the claims presented in the fourth amended complaint, and as such, is not reasonably calculated to lead to the discovery of admissible evidence." (Doc. 224-2, at 5).

Molina argues that this information is relevant to his claims and "needed to establish Defendants pattern and practice of deliberate indifference to an inmate's health or safety associated with the risk of the conditions of confinement at SCI Huntingdon." (Doc. 224, at 3). In opposition, Defendants argue that the request is not reasonably related to the claims presented or reasonably calculated to lead to the discovery of admissible evidence. (Doc. 226, at 3). In response, Molina asserts that Defendants' objection is "text-book boilerplated," and lacks specificity. (Doc. 237, at 6-7).

Here, Defendants' objections are properly raised and shall be sustained. First, Federal Rule of Civil Procedure 34 instructs that parties are only bound to produce documents already in existence or in their "possession, custody, or control." *See generally Harris v. Koenig*, 271 F.R.D. 356, 371 (D.D.C. 2010) ("Lack of evidence showing that producing party is in fact in possession of a document is grounds to deny a motion to compel.") (citations omitted). Second, the Court agrees with Defendants that Molina's request is disproportionate and not reasonably calculated to lead to the discovery of admissible evidence. Molina's fourth

amended complaint takes issue with the conditions of his confinement while he was incarcerated at SCI-Huntingdon, beginning in 2019. (Doc. 212). Molina does not provide an explanation as to why an inspection completed in 1992 would be relevant to his claims, which relate to events that took place beginning in 2019, and the Court declines to generate any such arguments. Accordingly, Molina's motion to compel discovery is denied.

### 3.  Numbers 5 & 6

In discovery request numbers 5 and 6, Molina seeks any and all originals or copies of "annual inspection reports, files, records, recordings, data, memos, or any material information pertaining to citations, penalties, sanctions, or orders issued by the Pennsylvania Department of Labor and Industry, or other authorized agency for neglect of unsafe condition(s), or hazardous acts from January 2000 to present date;" and "Administrative/Industrial work repair request submitted by prison officials for repairs and/or adjustments to be made throughout the institution from January 2000 to present date, including, but not limited to, selected prison's repair maintenance workshops, kitchen, and common area, non-redacted reports, records, recordings, filed, documents, memos, data and all material information showing the [ ] person(s) requested to fix the environmental conditions and thereafter, the finalization of that request." (Doc. 224-2, at 5-6). In response, Defendants state that these requests are overly broad, unduly burdensome, and not proportional to the needs of the case. (Doc. 224-2, at 6). Regarding discovery request number 5, Defendants state, without waiving the above-mentioned objection, that they have provided the responsive documents from the period during which Molina was incarcerated at SCI-Huntingdon, for inspection and copying by Molina. (Doc. 224-2, at 6).

Molina argues that the material sought in discovery request number 5 is relevant to his claims, "needed to establish Defendants actual knowledge of awareness of the risk of the conditions of confinement to the prisoner," and "establish that the Defendants have known about the appalling conditions at SCI Huntingdon for years, but have failed to make reasonable efforts to remedy those conditions." (Doc. 224, at 3). Further, Molina avers that the material sought in discovery request number 6 is relevant to his claims and "needed to establish the pas[t] and present deplorable conditions in which [he] was subjected while confined at SCI Huntingdon." (Doc. 224, at 4). In opposition, Defendants argue that responsive documents have been produced regarding discovery request number 5, but maintain that discovery request number 6 is overly broad, unduly burdensome, and not proportional to the needs of this case. (Doc. 226, at 3-4). Molina does not address this request in his reply.

Here, Defendants' objections are properly raised and shall be sustained. First, upon consideration of Defendants' responses, the Court concludes that Defendants appear to have satisfied its burden and produced responsive documents within its possession to Molina's discovery request number 5. Therefore, the Court declines to direct it to provide further responses to Molina's discovery request number 5. Second, the Court agrees with Defendants that Molina's discovery request number 6 is disproportionate and not reasonably calculated to lead to the discovery of admissible evidence. Although Molina submits that the information sought in discovery request number 6--Administrative/Industrial work repair requests submitted by prison officials for repairs and/or adjustments to be made throughout the institution from January 2000 to present date—are necessary to establish the conditions of SCI-Huntingdon, he does not sufficiently explain why those documents are specifically

relevant to the present action and his claims contained within the operative complaint. (Doc. 224-2, at 5-6). The Court notes that Molina's discovery request appears to be overly broad in its request of documents over a twenty-year time period. "Even if discovery is proportional to the needs of the case, courts have the discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit." *Schiavone v. Luzerne Cty.*, 343 F.R.D. 34, 41 (M.D. Pa. 2023) (quoting *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 18-11273, 2020 WL 1969898, at *6 (D.N.J. Apr. 24, 2020)). Accordingly, Molina's motion to compel discovery is denied.

### 4. Number 7

In discovery request number 7, Molina seeks "[Molina]'s SCI-Huntingdon "Change of Query – Cell History" and both work orders submitted by prison officials for cell 156 from February 26, 2022 to February 28, 2022." (Doc. 224-2, at 6). In response, Defendants state, "[n]o records exist for work orders completed for the requested dates for this cell. With respect to the request for Plaintiff's cell history, pursuant to Federal Rule of Civil Procedure 34, Defendants have provided this documentation for inspection and copying by Plaintiff." (Doc. 224-2, at 6).

Molina argues that the requested information is relevant to his claims and "is needed to establish the duration of [his] confinement in a highly toxic communicable disease carrying filthy and denigrating environment detrimental to his health and physical well-being while confined at SCI-Huntingdon." (Doc. 224, at 4). In opposition, Defendants assert that there were not any work orders generated for the requested dates for cell number 156. (Doc. 226, at 4). In response, Molina asserts that work orders were, in fact, submitted in February 2022

in relation to his allegations of mold, rust, asbestos, and corrosion contamination inside cell number 156 at SCI-Huntingdon. (Doc. 237, at 9).

Here, Defendants' objections are properly raised and shall be sustained. Federal Rule of Civil Procedure 34 instructs that parties are only bound to produce documents already in existence or in their "possession, custody, or control." *See generally Harris*, 271 F.R.D. at 371. Given Defendants' assertion that the information sought in discovery request number 7 does not exist, the Court concludes that Defendants appear to have satisfied its burden and produced responsive documents within its possession to discover request number 7. Nevertheless, Defendants are again reminded of their ongoing duty to supplement or correct its discovery responses if it "learns that in some material respect the disclosure or response is incomplete or incorrect." *See* Fed. R. Civ. P. 26(e)(1)(A). Accordingly, Molina's motion to compel discovery is denied.

### 5. Number 8

In discovery request number 8, Molina seeks "[a]ny and all originals or copies of DC-121 employees incident reports following fire occurrence at SCI-Huntingdon, including, but not limited to, the video footage of January 9, 2021, pertaining to fire evacuation." (Doc. 224-2, at 6). In response, Defendants state, "[t]his request for all incident reports related to fire occurrences at SCI-Huntingdon, is overly broad, unduly burdensome, and not proportional to the needs of the case." (Doc. 224-2, at 7).

Molina argues that this information is relevant to his claims and "is needed to establish the cause[s] and pattern of fire occurrence at SCI Huntingdon[, and] to establish that the Defendants witness 'John Rivello' declaration dated February 2, 2022, provided to the

Court's was fabricated with the Defendants Attorney's knowledge in reference to fire occurrence and fire evacuations." (Doc. 224, at 4). In opposition, Defendants assert:

> Defendants appropriately objected, as this request for fire incident reports is overly broad, unduly burdensome and not proportional to the needs of the case. Specifically, Molina failed to provide any discernable parameters for the requested information, such as a timeframe or reference to specific incidents, from the January 9, 2021 incident, to which Defendants also objected.
>
> It is submitted that information pertaining to the January 9, 2021 incident is not reasonably related to any claims presented in the fourth amended complaint. As such, this request is not reasonably calculated to lead to the discovery of admissible evidence. As Defendants further expounded upon in their prior response to this request, the incident involved an electrical fire on CA block that was caused by an inmate improperly charging his e-cigarette. All inmates on CA and CB unite were evacuated. However, at that time, Molina was housed on BA unit, which was not evacuated or otherwise impacted by this event.
>
> Additionally, as Defendants indicated, SCI-Huntingdon Superintendent Rivello's prior declaration in this matter included information regarding this incident. The undersigned denied Molina's unsubstantiated, baseless assertion that this declaration contained "fabricated" information that was proffered with the undersigned's knowledge.

(Doc. 226, at 4).

In response, Molina argues:

> It is respectfully submitted that within Plaintiff's Request for Production of Documents and Motion to Compel Discovery he did in fact request[ ] video footage of the January 9, 2021 fire incident, and that such claims are clearly relevant to his Eighth Amendment claims before the Court. [T]herefore, Defendants attorney's statement in reference to Plaintiff's failure to state any discernable parameters for the requested information as to the timeframe or reference to specific incidents is a complete fabricated statement. Nevertheless, such discovery is needed to show not only Defendants pattern and practice of deliberate indifference to an inmate's health or safety, but also their overall intentional disregard from human life by their failure to evacuate all inmates despite their knowledge that the cell blocks were filled with smoke and quickly spreading to the other cell blocks such as BA unit where Plaintiff was housed and therefore, Plaintiff was in fact impacted by the January 9, 2021 fire incident. Furthermore, Exhibit (A) and (B) attached herein clearly establish that John Rivello was not made Deputy Superintendent for Facilities Management at SCI Rockview during the January 9, 2021 fire incident.

[T]herefore, it is fair to say that Rivello's Declaration dated February 2, 2022 provided to the Court is indeed fabricated as it is misleading and secondhand hearsay knowledge submitted with intent to defraud and should be considered perjury. Plaintiff will be considering seeking further legal action for this blatant perjury during this case.

(Doc. 237, at 8).

The Court agrees with Defendants that the request for all incidents relating to fire evacuation, including footage from the January 9, 2021 fire incident, appears to be overly broad and unrelated to the claims set forth in the fourth amended complaint, which does not mention the January 9, 2021 fire incident or allege whether Molina was impacted by that incident. Because the Court has substantial doubt as to the relevance of the discovery of all DC-121 employees' incident reports following fire occurrences at SCI-Huntingdon that may have been filed at any time, the Court will sustain Defendants' objections at this time, without prejudice to Molina seeking a narrower discovery response that more precisely explains the relevance of this information in his claims, and which further narrows the scope of the discovery sought to specific incidents. Accordingly, Molina's motion to compel discovery is denied.

### 6. Number 9

In discovery request number 9, Molina seeks "[a]ny and all originals or copies and/pr non-redacted records, memos, recordings, data, documents, or material information on SCI-Huntingdon's Fire and Door Locking System(s) of the four original cell blocks, A, B, C, and D, including, but not limited to, past and present documents or material information(s)." (Doc. 224-2, at 7). In response, Defendants contend this request is vague and overly broad, and state, without waiving such objections, that Defendants have provided Molina with the following documents for inspection and copying: "fire evacuation procedures for the housing

units; fire alarm inspection reports for the timeframe during which Plaintiff was housed at SCI-Huntingdon; and the fire drill reports for the units on which Plaintiff was housed while incarcerated at SCI-Huntingdon." (Doc. 224-2, at 7).

Molina argues that this information is relevant to his claims and "is needed to establish the antiquated locking mechanisms of the cells, the use of padlocks to secure[ ] the doors, and the fire safety hazard[s] associated with said antiquated cell locking mechanisms." (Doc. 224, at 5). In opposition, Defendants aver that responsive documents, including explanatory information about the locking system in place for the cells, have already been produced. (Doc. 226, at 5). In response, Molina states Defendants are making fabricated arguments to convince the Court that the locking systems are properly functioning and suggests that the living conditions at SCI-Huntingdon are the same as when it was established in 1889. (Doc. 237, at 8-9).

Upon consideration of Defendants' responses, the Court concludes that Defendants appear to have satisfied its burden and produced responsive documents within its possession to Molina's discovery request number 9. Notably, Molina does not provide an argument as to whether the documents Defendants have produced thus far satisfy his discovery request. Therefore, the Court declines to direct Defendants to provide further responses to Molina's discovery request number 9. Accordingly, Molina's motion to compel discovery is denied.

### 7.   Number 10

In discovery request number 10, Molina seeks "[a]ny and all originals or copies of files, documents, records, recordings, or material information(s) detailing and describing both SCI-Huntingdon's Ventilation and Heating operation(s) pertaining to the four original cell blocks, A, B, C, and D, including, but not limited to, Air Ducts and its Large Fanning System and

So-Call Attic Function and Operation." (Doc. 224-2, at 7). In response, Defendants contend this request is vague and overly broad, and state, without waiving such objections, that Defendants have provided Molina with the information regarding the annual inspections of SCI-Huntingdon completed in 2019 and 2022 for inspection and copying by Molina, noting that an inspection was not completed in 2020 due to the COVID-19 pandemic and a virtual records review was conducted in 2021. (Doc. 224-2, at 7-8).

Molina argues that this information is relevant to his claims and "is needed to establish the lack of ventilation and the antiquated and poor heating system at SCI Huntingdon." (Doc. 224, at 5). In opposition, Defendants assert that the request "is overly broad and lacks any indication of the timeframe for which the information regarding the institution's ventilation system was requested." (Doc. 226, at 5). Defendants reiterate that they provided the annual inspection reports for the timeframe during which Molina was housed at SCI-Huntingdon. (Doc. 226, at 5). In addition, Defendants maintain that they do not possess responsive documents to illustrate the alleged "lack of ventilation," because SCI-Huntingdon is properly ventilated, detailing the following:"[t]he ventilation system is maintained and inspected frequently to ensure proper operation;" "[v]entilation and heat are provided to the cells by return air ducts in the rear of the cells, which draw air through the cells, preventing stratification and stagnation of the air on the housing units;" and "the large windows in the common areas on A, B, C, and D blocks are frequently opened to allow fresh air to circulate on the units." (Doc. 226, at 6). In response, Molina states Defendants are making fabricated arguments to convince the Court that the ventilation system is properly functioning and suggests that the living conditions at SCI-Huntingdon are the same as when it was established in 1889. (Doc. 237, at 8-9).

Here, Defendants' objections are properly raised and shall be sustained. First, it appears that Defendants have produced responsive documents to Molina's request. Second, Federal Rule of Civil Procedure 34 instructs that parties are only bound to produce documents already in existence or in their "possession, custody, or control." *See generally Harris*, 271 F.R.D. at 371. Accordingly, Molina's motion to compel discovery is denied.

### 8. Numbers 11 & 12

In discovery request numbers 11 and 12, Molina seeks any and all originals or copies of files, non-redacted reports, records, recordings, data, memos, data, or any material information related to "the levels of asbestos found throughout the prison, including, but not limited to, the cells, kitchen, law library, gymnasium, or common areas," and "person(s) requested to remove all asbestos materials found at SCI-Huntingdon, including, but not limited to, air sample friable asbestos results prior to the start of work." (Doc. 224-2, at 8). In response, Defendants contend these requests are "overly broad, unduly burdensome, and not proportional to the needs of this case." (Doc. 224-2, at 8). Without waiving these objections, Defendants state that they have provided responsive documentation from the period in which Molina was housed at SCI-Huntingdon, including semi-annual preventative maintenance inspection reports, for inspection and copying by Molina. (Doc. 224-2, at 8).

Molina argues that this information is relevant to his claims; "is needed to establish that the Defendants, with deliberate indifference, exposes [he] to levels of a toxic substance that pose an unreasonable risk of harm to his further health;" and "is needed to establish that a substantial risk of serious harm exists associated with the conditions of confinement, and that the Defendants knew of said substantial risk of serious harm from the very fact that the

risk was obvious, and that the Defendants acted or failed to act with deliberate indifference to [his] health or safety." (Doc. 224, at 5-6). In opposition, Defendants assert:

> [Discovery request numbers] 11 and 12 suffer from the same flaw as many of the other requests—namely, these requests are overly broad and devoid of any indication as to the timeframe or locations for which information is sought regarding the alleged presence of asbestos. Notably, as Defendants have previously indicated, contrary to Molina's baseless assertions, asbestos is not present and exposed throughout SCI-Huntingdon. Although asbestos may be present in some of the DOC's other facilities, it is not left unabated and exposed when it is discovered. If asbestos i[s] determined to be present, prompt remedial action is taken pursuant to policy. Without waiving their objection, Defendants provided what they believed to be responsive documentation for the timeframe during which Molina was incarcerated at SCI-Huntingdon.

> (Doc. 226, at 6-7).

Molina does not address this request in his reply.

Here, Defendants' objections are properly raised and shall be sustained. Upon consideration of Defendants' responses, the Court concludes that Defendants appear to have satisfied its burden and produced responsive documents within its possession to Molina's discovery request numbers 11 and 12. *See* Fed. R. Civ. P. 34; *Harris*, 271 F.R.D. at 371. Therefore, the Court declines to direct it to provide further responses to these discovery requests. Accordingly, Molina's motion to compel discovery is denied.

### 9. Number 13

In discovery request number 13, Molina seeks "[a]ny and all originals or copies of occupancy permits for double cell from the Pennsylvania Labor and Industry, for inmates on the general population pertaining to the four original cell blocks, A, B, C, and D." (Doc. 224-2, at 9). In response, Defendants state, "Defendants do not possess any responsive documents." (Doc. 224-2, at 8).

Molina argues that this information is relevant to his claims and "is needed to establish that the cells 7 by 8 feet, designed for single occupancy are inhabit[ed] by two inmates despite the Defendants knowledge of inadequate floor space to walk to stand." (Doc. 224, at 6). In opposition, Defendants emphasize that they do not possess any responsive documents and assert that such information is nevertheless irrelevant to this case because Molina was single-celled for the duration of his incarceration at SCI-Huntingdon. (Doc. 226, at 7). Molina does not address this request in his reply.

An "immutable rule defines the court's discretion when ruling on motions to compel discovery. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation." *Rosa-Diaz v. Harry*, No. 1:17-CV-2215, 2018 WL 6322967, at *3 (M.D. Pa. Dec. 4, 2018) (citing *AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); *Knauss v. Shannon*, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009)); *see* Fed. R. Civ. P. 34. Because Defendants do not appear to be in possession of the requested documents, and because Molina has not raised any argument challenging the adequacy of their effort to search, the request is denied.

## 10. Number 14

In discovery request number 14, Molina seeks "[a]ny and all originals or copies of SCI-Huntingdon's 'PERMIT OF OPERATION' from the Pennsylvania Labor and Industry to function as a State Correctional Institution, pertaining to the four original cell blocks, A, B, C, and D, from 1992 to present date." (Doc. 224-2, at 8-9). In response, Defendants contend this request is overly broad, unduly burdensome, and not proportional to the needs of this

case. (Doc. 224-2, at 9). Without waiving these objections, Defendants state that they have provided responsive documentation from the period in which Molina was housed at SCI-Huntingdon, including the most recent annual permits issued and in effect, for inspection and copying by Molina. (Doc. 224-2, at 9).

Molina argues that the requested information is relevant to his claims and "is needed to establish as to whether or not the Defendants meet the standards of adequacy of an institution's housing facilities associated with the American Correctional Association ("ACA") standards for adult correctional institutions." (Doc. 224, at 6). In opposition, Defendants argue that the discovery request is overly broad and not proportional to the needs of the case. (Doc. 226, at 7). Despite these objections, Defendants aver that they produced the requested information for the timeframe during which Molina was incarcerated at SCI-Huntingdon. (Doc. 226, at 7). Molina does not address this request in his reply.

Upon consideration of Defendants' responses, the Court concludes that Defendants appear to have satisfied its burden and produced responsive documents within its possession to Molina's discovery request number 14. Notably, Molina does not provide an argument as to whether the documents Defendants have produced thus far satisfy his discovery request. Therefore, the Court declines to direct Defendants to provide further responses to Molina's discovery request number 14. Accordingly, Molina's motion to compel discovery is denied.

### 11. Numbers 15 & 16

In discovery request numbers 15 and 16, Molina seeks any and all originals or copies of files, documents, records, data, recordings, memos, and any material information regarding Molina's medical files and treatment for which he received while confined at SCI-Huntingdon "pertaining to his injuries, such as nose bleeds, and respiratory problems

associated with the conditions of his confinement as stipulated by the Medical Department at SCI-Huntingdon." (Doc. 224-2, at 9). In response, Defendants contend these requests are overly broad, unduly burdensome, and not proportional to the needs of this case. (Doc. 224-2, at 9). Without waiving these objections, Defendants state that Molina's medical records are available for inspection and copying by Molina through a more convenient source – namely the institution in which Molina is currently housed. (Doc. 224-2, at 9).

Molina argues that the information is needed to establish his injuries associated with the conditions while confined at SCI-Huntingdon. (Doc. 224, at 7). In opposition, Defendants reiterate that the information is available through the institution in which Molina is currently housed, noting that the inmate handbook, as well as the publicly available version of the policy DC-ADM 003 to which inmates have access, provides that inmates may submit a DC-135A request to staff to access information contained within their files. (Doc. 226, at 7-8). In response, Molina avers that he "has attempted numerous times to obtain his medical files, and even submitted a Right to Know Request to obtain said documents . . . to no avail. (Doc. 237, at 9). Attached to the reply, Molina provides his Right to Know Request dated December 12, 2022, and the Pennsylvania DOC's response dated January 24, 2023. (Doc. 237, at 21-26).

Relevant here, when an inmate initiates a request for the production of his own medical records, in accordance with the DC–ADM 003, "Release of Information," the DOC's procedure provides a method by which he is given a reasonable amount of time to examine and inspect the requested documents. *See* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/003%20Release%20of%20Information.pdf (last accessed Mar. 21, 2023). As part of this procedure, the inmate

must initiate this process by submitting Department Form DC–135A "Inmate Request to Staff" to the Superintendent's Assistant or his/her designee at his current institution. The inmate may then review the documents and obtain copies of any documents at his expense; however, charges for the photocopies are made in accordance with the DOC's policies and procedures. Thus, the Court understands that Defendants do not object to Molina's access to his own medical records. Rather, they simply urge the Court to direct Molina to comply with these procedures when requesting medical records.

The Court concludes that compliance with the DOC regulations is a fitting and proper procedure for Molina to follow in securing access to his medical records. Indeed, in this regard, courts have frequently directed or encouraged inmates to comply with reasonable institutional procedures when securing copies of their own prison medical records for litigation purposes. *See, e.g., Bull v. United States,* 143 F. App'x 468 (3d. Cir.2005); *Daniels v. Kelchner,* No. 05–1601, 2007 WL 2068631 (M.D. Pa. July 17, 2007).[3] Defendants have represented they are prepared to make the requested discovery available provided Molina complies with these institutional requirements. Therefore, consistent with Defendants' recommended approach, Molina shall be able to access his medical records, provided he

---

[3] The Court notes that the DOC policy, in part, calls for Molina to bear the cost of making copies of his medical records. While Molina has not made a specific request to have Defendants bear these costs, the noting in 28 U.S.C. § 1915 authorizes federal courts to finance or pay for a party's discovery expenses incurred while prosecuting a lawsuit, even if that party has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). A review of the case law reveals that, as a general rule, the Court lacks the lawful authority to help finance, or relieve Molina, who is proceeding *in forma pauperis*, from the costs associated with taking pre-trial discovery. *See Tabron v. Grace,* 6 F.3d 147, 159 (3d Cir.1993) ("There is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."); *Victor v. Varano,* No. 3:11-CV-891, 2012 WL 1514845, at *8 (M.D. Pa. May 1, 2012).

complies with DOC procedures for obtaining this information, and that he bears the cost for this procedure. Accordingly, the motion to compel discovery is DENIED.

    B.   R EQUEST FOR R ECONSIDERATION

    In the objection to and request for reconsideration, Molina asserts that the Court's Order "favored" Defendants and "prejudiced" Molina "by placing him at an extreme *disadvantage* which allows the Defendants to *circumvent* and/or otherwise *manipulate* the Discovery process, *inter alia*, to its advantage while time is plainly *limited* and of the essence." (Doc. 234, at 2) (emphasis in original). Molina requests that the Court rule on his motion to compel discovery, reissue a case management Order pending the outcome of the motion to compel discovery, and direct Defendants to provide him with access to the requested discovery documents. (Doc. 234, at 3; Doc. 235, at 7-8).

    The Court has the inherent power to set case management deadlines in a manner to promote the goals of speedy and efficient resolutions of all actions. *See* Fed. R. Civ. P. 1. Rule 16 specifically gives this Court wide latitude to manage discovery and other pretrial matters, and to set deadlines for amending pleadings, filing motions, and completing discovery. Fed. R. Civ. P. 16; *see also Eichorn v. AT & T Corp.,* 484 F.3d 644, 650 (3d Cir.2007); *Whitney v. Wetzel*, No. 2:12-CV-01623, 2014 WL 5513481, at *3 (W.D. Pa. Oct. 31, 2014). Molina's motion is liberally construed to be in the nature of an appeal by objections to a non-dispositive matter that may be decided by the undersigned United States Magistrate Judge. *See Houser v. Beard*, No. CIV.A. 10-0416, 2013 WL 4494373, at *1 (W.D. Pa. Aug. 22, 2013) ("A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court, subject to the aggrieved party's right to appeal the determination to the District Court, which will only reverse the Magistrate Judge's decision on such matters if it is

'clearly erroneous or contrary to law.'") (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); W.D. Pa. L.R. 72.1(C)(2)).

Here, the amended case management Order dated January 25, 2023, was entered to do just that. (Doc. 230). Molina must adhere to the schedules established by the Court. Accordingly, Molina's objections to the Court's Order dated January 25, 2023, are OVERRULED and his request for reconsideration is DENIED. (Doc. 234). However, given the deadlines for discovery and dispositive motions have or will shortly expire, the Court will set new case management deadlines in the Order accompanying this Memorandum.

II.   **CONCLUSION**

Based on the foregoing, Molina's motions to compel discovery, motion for reconsideration, and motion for an evidentiary hearing (Doc. 224; Doc. 234; Doc. 238) are **DENIED**.

An appropriate Order follows.

**BY THE COURT:**

Dated: April 25, 2023                    _s/ Karoline Mehalchick_
                                          **KAROLINE MEHALCHICK**
                                          **Chief United States Magistrate Judge**